UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-21009-CIV-GARBER

BONNIE LYNN MIODONSKI,

    Plaintiff,

v.

CAROLYN W. COLVIN,

Acting Commissioner of Social Security
Administration,

    Defendant.

_____/

## **ORDER**

    THIS CAUSE is before the Court on the parties' Consent to Magistrate Jurisdiction. (DE 24.) Pursuant to such consent, the Court has received and reviewed Plaintiff Bonnie Miodonski's Motion for Summary Judgment (DE 28) and Defendant Michael J. Astrue, Commissioner of Social Security's Motion for Summary Judgment and Response to Plaintiff's Motion for Summary Judgment (DE 29 & 30). Neither party filed a reply. The general issues before this Court are whether the record contains substantial evidence to support the denial of benefits to the plaintiff and whether the proper legal standards were applied. Upon a review of the filings and the record in this case and upon due consideration, the Court hereby DENIES the Commissioner's Motion for Summary Judgment (DE 29) and GRANTS Miodonski's Motion for Summary Judgment (DE 28) for the reasons set forth below. Accordingly, the Court hereby REVERSES the administrative decision of the Commissioner and ORDERS that a finding of "disabled" be entered for the claimant. This cause

is remanded to the Commissioner for the sole purpose of calculating benefits.

## I.  BACKGROUND

### A.  Procedural History

Pursuant to 42 U.S.C. § 405(g), Miodonski seeks judicial review of the final administrative decision of the Commissioner denying her disability claim for Supplemental Security Income payments.  At issue is whether the Administrative Law Judge ("ALJ") erred in finding that Miodonski was "not disabled" and therefore unentitled to SSI payments.

Miodonski filed her application for SSI on January 16, 2007, asserting that she became disabled on December 31, 2004, due to a "mental" condition.  (Administrative Transcript ("Tr.") 140-44, 158; DE 20.)  Following the initial denials of her application, Miodonski received a hearing before ALJ Timothy Maher on May 12, 2010.  (Tr. 36-75.)  On July 30, 2010, the ALJ issued a written decision, concluding that Miodonski could perform a partial range of light work and was "not disabled."  (Tr. 12-30.)

In denying Miodonski's claim, the ALJ applied the five steps of the sequential evaluation process used in evaluating disability claims.  20 C.F.R. § 416.920 (2012).  This process requires the ALJ to consider, in sequence, whether a claimant:  (1) is working; (2) has a severe impairment, as defined in the regulations; (3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; (4) can return to her past relevant work; and (5) if not, whether she can perform other work.  *Id*.

Because the claimant was found to be not working, the ALJ proceeded to the second step and found that Miodonski had the following severe impairments:  diffuse arthralgias, status post motor vehicle accident, decreased visual acuity, an affective disorder, and a substance abuse disorder.  (Tr.

17.) Continuing to the third step, the ALJ determined that Miodonski's impairments did not meet or equal the criteria of any of the listed physical or mental impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 416.920(d)). (Tr. 17-20.) This finding then required the ALJ to proceed to the fourth step wherein he determined that Miodonski would be unable to perform her past relevant work as a telephone solicitor. 20 C.F.R. § 416.965. (Tr. 28.) Consequently, the determination continued to the fifth and final step, wherein the ALJ determined that, based on Miodonski's Residual Functional Capacity ("RFC"), there were a sufficient number of jobs available in the national economy that she could perform, resulting in a conclusion of "not disabled." (Tr. 28-29.) Specifically, the ALJ's "Findings" were as follows:

> 1. The claimant has not engaged in substantial gainful activity since January 16, 2007, the application date (20 CFR 416.971 *et seq.*).
> . . . .
> 2. The claimant has the following severe impairments: diffuse arthralgias, status post motor vehicle accident, decreased visual acuity, an affective disorder, and a substance abuse disorder (20 CFR 416.920(c)).
> . . . .
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
> . . . .
> 4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a partial range of light work (see 20 CFR 416.967(b)) in that she can lift, carry, push, and/or pull up to 10 pounds frequently and up to 20 pounds occasionally. She can sit for up to 6 hours in an 8 hour workday and stand and/or walk for up to 6 hours in an 8 hour workday. The claimant is limited to work not requiring far visual acuity. Furthermore, the claimant is limited to the basic demands of unskilled work in that she can: (i) understand, remember, and carry out short and simple instructions; (ii) respond appropriately to supervision; (iii) interact appropriately with co-workers; and (iv) respond appropriately to changes in routine work settings. (SSRs 85-15 and 96-9p).
> . . . .
> 5. The claimant is unable to perform any past relevant work (20 CFR 416.964).
> . . . .
> 9. Considering the claimant's age, education, work experience, and residual

3

>functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).
>. . . .
>10. The claimant has not been under a disability, as defined in the Social Security Act, since January 16, 2007, the date the application was filed (20 CFR 416.920(g)).

(Tr. 17-29.)

Thereafter, the Appeals Council denied Miodonski's request for review, thus making the ALJ's non-disability finding the final administrative decision of the Commissioner. (Tr. 1-5.) Miodonski then filed this appeal. (DE 1.)

### B. Administrative Hearings

At the May 12, 2010, hearing before the ALJ, extensive evidence was presented regarding Miodonski's functional limitations. Miodonski testified that she is able to make sandwiches and do laundry, but is unable to cook or do dishes because she accidentally burns or cuts herself on a frequent basis. (Tr. 48.) Her roommate, Jeffryn Norwood, who also testified at the hearing, stated that Miodonski cuts or burns herself approximately nine out of every ten attempts when she tries to cook. (Tr. 68-69.) Miodonski said that she is afraid to leave the house and in fact does not leave the house on her own. She said that she can only travel alone on the bus when her roommate escorts her to the bus stop, and even then she travels only for counseling appointments, Alcoholics Anonymous meetings, and other medical visits. (Tr. 49, 64-67.)

Gary Fannin, a vocational expert ("VE"), also testified at the hearing. (Tr. 71-74.) The ALJ proposed two hypotheticals regarding Miodonski's RFC to the VE. (*See id.*) In response to the first hypothetical, which was based on Miodonski's RFC, age, education, work history, and specific limitations to a partial range of light work, the VE stated that Miodonski could not perform past work. (Tr. 73.) When the ALJ asked if *any* work was available, the VE acknowledged three jobs

in the Miami regional area that Miodonski could perform. (*Id*.) However, the ALJ then added additional limitations regarding Miodonski's RFC to the VE in a second hypothetical. The ALJ stated that "secondary to psychiatric symptoms, the individual would occasionally be unable to complete a normal work day and normal work week" and asked the VE whether work was available to such an individual. (Tr. 74.) The VE responded that there would be no work available for such an individual. (*Id*.)

## II. Standard of Review

The ALJ's decision is reviewed to determine if it is supported by substantial evidence and based on proper legal standards. *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003) (internal citations omitted). Although the ALJ's factual findings are limited to a deferential standard of review, no presumption of validity is applied to his legal conclusions, including a determination of the appropriate legal standards to be applied in analyzing and deciding a claim for benefits. *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991). When supported by substantial evidence, the Commissioner's findings are conclusive. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is more than a scintilla, but less than a preponderance, and is generally defined as such relevant evidence as a reasonable mind would accept as adequate to support a conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

## III. Discussion

In seeking to have the ALJ's decision reversed, Miodonski points to two errors that she claims the ALJ made in concluding that she is "not disabled." First, Miodonski raises the argument that the ALJ erred by failing to resolve a conflict between the VE's testimony and the Dictionary of Occupational Titles ("DOT"). Second, Miodonski asserts that the ALJ erred by improperly omitting

5

a crucial functional limitation from Miodonski's mental RFC without giving an explanation for doing so.  In response, the Commissioner points to some evidence in the record that could support the ALJ's decision, but fails to reconcile the ALJ's final decision with contrary evidence that the ALJ himself found should be given weight.

### A. ALJ Did Not Commit Legal Error of Failing to Resolve Conflict Between VE Testimony and DOT

With respect to Miodonski's first claim that the ALJ erred by failing to resolve a conflict between the VE's testimony and the DOT, the Court agrees with the Commissioner in finding such claim to be unavailing.

First, Miodonski does not support her argument that the examples of jobs identified by the VE as unskilled (housecleaner, cafeteria attendant, fast food worker) conflict with the DOT because they require a higher level of General Educational Development ("GED") than unskilled work. Miodonski argues that the restriction to simple and routine tasks limit her to performing work requiring a reasoning level of no greater than SVP 1 jobs and that SVP 2 jobs require that an individual carry out detailed, but uninvolved written and oral instructions.[1]  However, the Eleventh Circuit has held that, "[e]ven assuming that an inconsistency existed between the testimony of the [VE] and the DOT, the ALJ did not err when . . . he relied on the testimony of the [VE]." *Miller v. Comm'r of Soc. Sec.*, 246 F. App'x 660, 662 (11th Cir. 2007) (rejecting plaintiff's argument that ALJ's finding that plaintiff could perform simple, routine, repetitive work was inconsistent with

---

[1] SVP refers to the DOT term "Specific Vocational Preparation" and refers to the length of time it takes to learn a job. Dictionary of Occupational Titles, Appendix C (4th Ed., Revised 1991). An SVP of 1 involves a short demonstration; SVP 2 involves anything beyond short demonstration up to and including one month; SVP 3 involves over one month and up to and including 3 months. *Id*.

DOT descriptions of the jobs that the VE identified as having level-three reasoning).  Furthermore, there was not a conflict between the VE's testimony indicating SVP 2 jobs and the DOT because an SVP of 1 to 2 corresponds with the definition of "unskilled work."  *See* 20 C.F.R. § 416.968(a); *see also* Social Security Ruling 00-4p, 65 Fed. Reg. 75,759-01, 75,760 (Dec. 4, 2000).  Lastly, because Miodonski completed the tenth grade, which is considered a "limited education," she possessed the GED necessary to perform the minimal demands of the unskilled jobs identified by the VE.[2]  *See* 20 C.F.R. § 416.964(b)(3).  Because the jobs identified by the VE are at the unskilled level, they are consistent with Miodonski's educational development.  *See id*.

Therefore, the ALJ did not commit legal error in relying upon this aspect of the VE's testimony, and would not have committed legal error even if the VE's testimony conflicted with the DOT.  *See Peeler v. Astrue*, 400 F. App'x 492, 496 (11th Cir. 2010); *see also Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999).

However, the Court also finds that Miodonski's first claim is not dispositive in this case and is separate from and immaterial to the second contention, which the Court finds to be of merit.

**B.     Dr. Peterson's Mental Residual Functional Capacity Assessment**

State agency consulting psychologist, Dr. J. Patrick Peterson, Ph.D., reviewed the record and evaluated Miodonski's mental RFC.  (Tr. 334-336.)  Dr. Peterson noted that Miodonski had been receiving treatment as an outpatient at a community mental health center since August of 2006.  (Tr. 336.)  He further noted that both treating source input and the findings of two consultative

---

[2]"Limited education means ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex duties needed in semi-skilled or skilled jobs. . . . [A] 7th grade through . . . 11th grade level of formal education is a limited education." 20 C.F.R. § 416.964(b)(3).

7

examinations made in 2007 "are contraindicative of any diagnosable medical [disorder] beyond mild to moderate Adjustment Reaction arising [within] a rather irresponsible/self-serving/manipulative/antisocial personality . . . [with] likely [symptoms of] exaggeration/malingering in pursuit of secondary gain . . . ." (*Id.*)  Dr. Peterson concluded that Miodonski was still capable of sustaining the mental demands of "appropriate concentrated task oriented activity" and that she continued to function at least minimally adequately in a full range of routine activities of daily living within her physical and motivational, and volitional parameters.  (*Id.*)

Dr. Peterson completed an assessment form on which he indicated that Miodonski was "Not Significantly Limited" in the ability to understand, remember, and carry out very short and simple instructions; sustain an ordinary routine without special supervision; make simple work-related decisions; interact with the general public; maintain socially appropriate behavior; and to be aware of normal hazards and take appropriate precautions. (Tr. 334-35.) On the other hand, the assessment form *also* indicated that Miodonski was "Moderately Limited" in the "ability to maintain attention and concentration for extended periods" and the "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." (*Id.*)

### C. The ALJ Committed Reversible Error by Inexplicably Omitting Parts of Dr. Peterson's Medical Source Opinion

Miodonski contends that her moderate functional limitations, found by Dr. Peterson, are crucial to her disability determination.  And, she argues, it was error for the ALJ to omit mention of these limitations because the ALJ had found Dr. Peterson's opinion to be reliable and consistent with the medical evidence of record.

8

Miodonski brings this matter to the Court's attention because (1) the ALJ failed to give an explanation for disregarding parts of Dr. Peterson's medical opinion, as required by SSR 96-8p, and (2) the categories indicating that Miodonski is "Moderately Limited" are critical parts of Dr. Peterson's opinion that are relevant to the ALJ's RFC assessment of Miodonski and, when factored into the RFC assessment, would necessarily change the outcome of this case.[3]

"The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p at 7 (1996). Here, although the ALJ considered and addressed Dr. Peterson's medical opinion, the ALJ's RFC assessment of Miodonski inexplicably omits significant portions of Dr. Peterson's opinion that are favorable to Miodonski. Even more, the ALJ did not explain why he accepted some portions of Dr. Peterson's medical opinion but omitted mention of other, highly relevant portions. The ALJ addressed only categories indicating that Miodonski was "Not Significantly Limited" and omitted mention of categories indicating that Miodonski was "Moderately Limited." (Tr. 334-335.) In particular, the ALJ's RFC assessment ignored Dr. Peterson's determination that the claimant was "Moderately Limited" in her "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." (Tr. 335.)

In determining Miodonski's RFC, the ALJ stated in his opinion, without qualification, that

---

[3] A claimant's RFC is "that which an individual is still able to do despite the limitations caused by his or her impairments. . . . [T]he ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case." *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004).

9

"[s]ome weight is given to Dr. Peterson's opinion because it is consistent with the medical evidence of record." (Tr. 27.) However, Miodonski's RFC did not contain her moderate limitations, as determined by Dr. Peterson. Although the ALJ acknowledged that Miodonski's ability to perform all or substantially all of the requirements of the full range of light work has been impeded by additional limitations (Tr. 29), the ALJ did not address or explain his reasons for disregarding the moderate limitations as documented in Dr. Peterson's assessment. Therefore, the ALJ committed legal error because he failed to articulate reasons for disregarding the moderate limitations determined by Dr. Peterson and his RFC assessment of the claimant improperly conflicts with Dr. Peterson's opinion.

      The ALJ presented two hypotheticals to the VE: one that included limitations secondary to psychiatric symptoms that would prevent the hypothetical individual from completing a normal work day and normal work week, and one that did not. (Tr. 73-74.) Because the ALJ ultimately disregarded portions of Dr. Peterson's opinion, as discussed above, the ALJ relied on the VE's response to the hypothetical that did not include limitations secondary to psychiatric symptoms, for which work existed. Conversely, the VE's response to the hypothetical including the limitations was that there was no work available for such an individual. (Tr. 74.) Therefore, the ALJ erred by relying on the portion of the VE's response that did not account for the limitations documented by Dr. Peterson. Thus, without providing an explanation, the ALJ selectively excluded a significant portion of Dr. Peterson's assessment, which, in light of the VE's testimony, would have mandated a finding of "disabled." This constitutes reversible error. *See Parker v. Comm'r of Soc. Sec.*, 866 F. Supp. 2d 615, 623 (S.D. Ohio 2010) (finding that the ALJ committed reversible error when ignoring the physician's determinations, not explaining why he disregarded certain limitations, and

VE stated that there would be no work for the claimant with such restrictions); *See also Howard v. Comm'r of Soc. Sec.*, 276 F. 3d 235, 240-241 (6th Cir. 2002) (finding that the ALJ committed reversible error by "selectively" including only parts of a medical source's opinion that suggest that the claimant was capable of performing work).

The Commissioner argues that "Dr. Peterson did not indicate that a moderate limitation on the ability to concentrate or experience interruptions from psychological symptoms would preclude [the claimant's] ability to perform simple, unskilled work." (Def.'s Mot. at 14.) However, Dr. Peterson's failure to indicate such a preclusion does not necessarily suggest that Miodonski retains "the ability to perform simple, unskilled work." (*See* Tr. 335.) Furthermore, there is no evidence *opposing* Dr. Peterson's assessment of the claimant's inability to complete a workday or workweek.

The Commissioner also argues that Miodonski's reliance upon Dr. Peterson's findings of moderate limitations to support her argument is unfounded because "Dr. Peterson noted that [the claimant] was still capable of sustaining the mental demands of 'appropriate concentrated task-oriented activity' and that she continued to function at least minimally adequately in a full range of routine activities of daily living within her physical[,] motivational, and volitional parameters (Tr. 336)." (Def.'s Mot. at 14.) However, a claimant's ability to function in a full range of routine activities of daily living is a wholly distinct category from a claimant's ability to function and complete a normal workday or workweek without interruptions from psychologically based symptoms. The Commissioner fails to offer any explanation or support for her contention that the Court should interpret such obviously distinct categories as meaning the same thing.

In conclusion, the ALJ's RFC assessment of Miodonski directly conflicts with a medical source opinion that the ALJ gave weight and found was consistent with the medical evidence of

11

record. Further, the ALJ erred because he did not explicitly reject either Dr. Peterson's medical opinion or the VE's testimony and did not otherwise explain the inconsistencies of his determination with their opinions. *See Hanna v. Astrue*, 395 F. App'x 634, 636 (11th Cir. 2010). The ALJ's RFC determination should have accounted for Miodonski's "Moderate Limitation" regarding her inability to complete a normal workday or workweek without interruptions from psychologically based symptoms, as indicated in the medical source opinion of Dr. Peterson. Hence, had such legal standards and limitations been properly considered, Miodonski's RFC would have resulted in a finding—consistent with the VE's testimony to the second hypothetical—that there would be no work available.

When a court finds that there is no need for the record to be further developed and that the evidence necessarily points to a specific finding, the reviewing court may enter the finding that the Commissioner should have made in the first instance. *See Venette v. Apfel*, 14 F. Supp. 2d 1307, 1315 (S.D. Fla. 1998). Based on the foregoing, and pursuant to 42 U.S.C. § 405(g), the Court REVERSES the Commissioner's decision without the need for further deliberations, finding that a determination of "disabled" would necessarily follow a correction of the Commissioner's error.

## IV.   Conclusion

Upon careful consideration, the Court finds that the ALJ committed legal error, and the ALJ's RFC assessment of Miodonski is not supported by substantial evidence. The Court therefore

ORDERS that the decision of the ALJ is REVERSED and the cause is HEREBY remanded to the Commissioner solely for an entry of a finding of "disabled" and for the calculation and payment of the awarded benefits.

Accordingly, it is also ORDERED that Miodonski's Motion for Summary Judgment (DE 28)

be GRANTED and that the Commissioner's Motion for Summary Judgment (DE 29) be DENIED.

DONE and ORDERED in Chambers at Miami, Florida, this 22nd day of July 2014.

_____
BARRY L. GARBER
UNITED STATES MAGISTRATE JUDGE